UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MAHILIMA BAA,

                Plaintiff,                          **MEMORANDUM & ORDER**

               v.                                     22-CV-2602 (RPK) (SJB)

ERIC GONZALEZ, THE NEW YORK CITY
ADMINISTRATION FOR CHILDREN'S
SERVICES, ISMAEL ZAYAS, JOSEPH
GRAVINO, KENNETH SHIELDS, CARL
ROADARMEL, JOSEPH BELLO, MATTHEW
MILBOUER, and THE NEW YORK CITY
POLICE DEPARTMENT,

                Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

      *Pro se* plaintiff Mahilima Baa brings this action alleging violations of 42 U.S.C §§ 1983, 1985, and 1986. He names as defendants Kings County District Attorney ("KCDA") Eric Gonzalez; KCDA Detective Investigator Ismael Zayas; the New York City Administration for Children's Services ("ACS"); ACS caseworker Matthew Milbouer; the New York City Police Department ("NYPD"); NYPD Officers Joseph Gravino and Kenneth Shields, Sergeant Joseph Bello, and Detective Carl Roadarmel; and the NYPD. Defendants move to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). The motion is granted.

## BACKGROUND

      The following facts are taken from the complaint and assumed true for the purposes of this order. Plaintiff's claims involve a series of incidents involving members of the NYPD and ACS occurring between February 18, 2015, and May 5, 2022.

I. **2015 Events**

In the early morning of February 18, 2015, plaintiff was driving in Brooklyn when a car in front of him "stalled and/or deliberately halted at the intersection after signaling that it was turning left." Compl. 5 (ECF Pagination) (Dkt. #1).[1] After plaintiff honked his horn, the driver moved aside and let plaintiff pass. Plaintiff turned out of the intersection but was immediately stopped by "an unmarked police vehicle" driven by defendants Officers Gravino and Shields. *Ibid*. Plaintiff alleges that after defendant Gravino asked him for his driver's license, the vehicle that had previously been stalled or stopped drove by, "and the driver of that vehicle gestured a thumbs up signal to [Gravino]," who nodded back. *Ibid*. Gravino then asked plaintiff if he knew why the officers had stopped him; plaintiff said "he had no idea." *Id.* at 6. After plaintiff expressed disbelief at Gravino's stated rationale for the stop—that plaintiff was driving too close to the car in front of him—Gravino again "demanded that plaintiff produce his driver's license." *Ibid*. Plaintiff "produc[ed] his New York City Process Server's Identification, Passport Card and Tribal Driver's License"—plaintiff alleges he is a Native American and a member of the Yamasee Nation.[2] Gravino then allegedly asked plaintiff for a "real driver's license." *Ibid*.

Plaintiff alleges he told Gravino that "if [he] d[id] not know what these documents are," he should "call [his] supervisor," upon which Gravino summoned Sergeant Bello. *Ibid*. When Sergeant Bello arrived at the scene, he ordered plaintiff to exit his vehicle so that he could be "handcuffed and arrested." *Ibid*. Sergeant Bello then made derogatory racial remarks about plaintiff to Gravino, at which defendants "shared a laugh." *Ibid*. Plaintiff was arrested and his property inventoried at the precinct. *Ibid*. At this point, plaintiff was asked if he would like to contact his attorney, and plaintiff "place[d] a phone call to an attorney." *Ibid*.

---

[1] Citations are to page numbers in plaintiff's complaint, as the complaint's paragraphs are not sequentially numbered.
[2] Plaintiff refers to the tribe variously as "Yamasi," Compl. 2, "Yamassee," Compl. 3, and "Yamasee," Compl. 12.

2

Prior to his arraignment, plaintiff was informed that an attorney had come to see him, but "the alleged attorney was[] in fact defendant [Detective] Roadarmel," who "began to interrogate plaintiff about an alleged shooting in 2009." *Ibid*. At that point, plaintiff alleges, he immediately "realized that the vehicle stop, and subsequent thumbs up signal by the driver of the deliberately stalled vehicle, was part of a conspiracy to detain him for defendant Roadarmel's illegal and improper questioning." *Id*. at 7. Plaintiff told Detective Roadarmel he had nothing to discuss. *Ibid*. Several months later, the charges against plaintiff were "adjourned in contemplation of dismissal" and "ultimately and properly ordered sealed." *Id*. at 9.

## II.     2018 Events

Over three years later, on August 12, 2018, unspecified defendants allegedly enlisted ACS to "evict[] Ms. Douglas"—the mother of plaintiff's children—"along with two of his children from a shelter." *Id.* at 10. Plaintiff alleges that Ms. Douglas and the children were evicted due to Ms. Douglas's "failure to provide social security numbers for the children." *Ibid*. According to plaintiff, Ms. Douglas instead presented the children's tribal identity cards—they are also members of the Yamasee Nation— but that identification was not accepted. *See ibid.*

## III.    2020 Events

Two years later, Ms. Douglas and plaintiff's children were residing in a house owned by "an uncle" of the children. *Id.* at 11. At some point, Ms. Douglas had provided that address to ACS at the agency's request. *Ibid.* Shortly after doing so, Ms. Douglas "informed plaintiff that she had been in receipt of notices that both she and plaintiff were going to be arrested." *Ibid.* Then, on September 10, 2020, "members of the Sheriff's Department breached the door" of the residence where plaintiff's children and Ms. Douglas resided and "extracted" the children "by force." *Ibid*. Plaintiff alleges that defendant ACS case agent Milbouer prepared "false, inaccurate and misleading information and documents," which briefing suggests included "child abuse and

3

neglect allegations," Defs.' Mem. of Law in Supp. of Mot. to Dismiss 13 ("Mot. to Dismiss") (Dkt. #20), that led to the ACS raid. As a result of these events, plaintiff alleges that his children "frequently exhibit anxious features[] when strangers approach them." Compl. 11.

IV.     **2021 Events**

Next, on April 2, 2021, plaintiff asserts that unnamed members of the NYPD approached plaintiff's neighbors, asked them questions about plaintiff's relationships in the community, and advised they not associate with plaintiff. *Id.* at 10.

V.      **2022 Events and the Instant Complaint**

The following year, on May 5, 2022, plaintiff received notice from Detective Investigator Zayas requesting that plaintiff "surrender himself to defendant Zayas for processing of criminal charges of theft," which plaintiff saw as "a continuation of a conspiracy to utilize the laws of the State of New York to engage in discrimination against [him]." *Id.* at 7. Plaintiff asserts that he is the "lawful holder of a lease to the property at 321 Willoughby Avenue, Brooklyn" and that Detective Zayas and DA Gonzalez "erroneously allege[d]" that plaintiff stole said property. *Ibid.*

The next day, May 6, 2022, plaintiff filed his complaint in this case, invoking 42 U.S.C. §§ 1983, 1985, and 1986 to assert various claims based on the events of the prior seven years. Liberally construed, the complaint can be read to assert the following claims:

- Section 1983 false arrest, deprivation of Equal Protection, malicious prosecution, and conspiracy against defendants Bello, Gravino, Shields, and Roadarmel, relating to the February 2015 vehicle stop, arrest, and subsequent prosecution, *see* Compl. 5–6, 8–9;

- Section 1983 unlawful entry and unlawful seizure against defendants Milbouer and ACS relating to the September 2020 ACS raid, *see id.* at 10–11;

- Section 1983 deprivation of Equal Protection and conspiracy against defendants Zayas and Gonzales relating to the May 2022 request that plaintiff surrender on charges of theft, *see id.* at 7;

- Section 1983 claims against the NYPD, the ACS, and the City of New York based on an alleged "pattern and practice of violating the civil rights of non-white

4

- citizens," *id.* at 7, including by refusing to recognize tribal identification, *id.* at 10; and

- An overarching conspiracy to deprive plaintiff of his constitutional rights in violation of Section 1985 and 1986 against all defendants, *see id.* at 8–9.

Defendants now move to dismiss the complaint for failure to state a claim.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." A complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the "plausibility standard is not akin to a 'probability requirement,'" it does require that a plaintiff allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quoting *Twombly*, 550 U.S. 544, at 556). In contrast, a complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Although the court must accept all facts alleged in a complaint as true, this principle does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678.

In reviewing a motion to dismiss, a court may consider only (i) the complaint itself, (ii) documents attached to the complaint or incorporated by reference, (iii) documents the plaintiff both relied on and knew of when bringing suit, and (iv) matters in the public record which are properly subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

5

A *pro se* plaintiff's complaint must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Moreover, if a "liberal reading of the complaint gives any indication that a valid claim might be stated," the court should not dismiss the complaint without first granting leave to amend. *Shomo v. City of New York,* 579 F.3d 176, 183 (2d Cir. 2009) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d. Cir. 1999)).

## DISCUSSION

For the reasons set out below, defendants' motion to dismiss is granted in its entirety.

**I.     Plaintiff's Claims Arising Out of the February 2015 Stop and Arrest Are Dismissed as Untimely.**

Plaintiff's Section 1983 claims based on the 2015 vehicle stop and subsequent arrest are dismissed as untimely. "The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law." *Shomo*, 579 F.3d at 181; *see Duplan v. City of New York,* 888 F.3d 612, 619 (2d. Cir. 2018) (citing *Shomo*, 579 F.3d at 181). And that three-year period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d. Cir. 2002) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).

Applying those principles, plaintiff's false arrest, malicious prosecution, Equal Protection, and conspiracy claims arising from the events of 2015 are time barred.

*False arrest.* The statute of limitations for a Section 1983 false arrest claim "begins to run at the time the claimant becomes detained pursuant to legal process"—here, in 2015. *Wallace v. Kato*, 549 U.S. 384, 397 (2007). Because plaintiff did not file his complaint until May of 2022,

6

nearly seven years later, the claim is time-barred, and plaintiff alleges no facts that speak to the sort of "extraordinary circumstances" required for the court to apply the doctrine of equitable tolling. *See Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005).

*Equal Protection.* To the extent plaintiff brings a claim relating to the 2015 arrest under the Equal Protection Clause based on his race or tribal membership, that claim is untimely for the reasons just given. And while it is true that, where the plaintiff alleges a "continuous practice and policy of discrimination," the statute of limitations for certain claims begins to run only from the most recent discriminatory act, *Fahs Const. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013), that exception to the typical date-of-accrual rule "applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but [only] to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment*.*" *Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Plaintiff's 2015 arrest was a discrete act of alleged discrimination, so the statute of limitations began to run at the time of arrest.

*Malicious prosecution.* For malicious prosecution claims under Section 1983, the claim accrues, and the statute of limitations begins to run, when the prosecution "terminate[s] in the plaintiff's favor." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). Here, plaintiff alleges that, "several months" after the February 2015 arrest, all charges against him were "adjourned in contemplation of dismissal" and "ultimately and properly ordered sealed." Compl. 9. Plaintiff's malicious prosecution claims are therefore also time-barred, because the statute of limitations on a malicious prosecution claim relating to these events would have begun to run by early 2016, so that the period would have expired by early 2019.

*Conspiracy.* The statute of limitations for a Section 1983 conspiracy claim begins to run when the plaintiff discovers defendants' wrongdoing. *See Maier v. Phillips,* 205 F.3d 1323 (2d

7

Cir. 2000). Here, plaintiff alleges that he "realized that the [2015] vehicle stop . . . was part of a conspiracy to detain him for defendant Roadarmel's illegal and improper questioning" shortly after his arrest. Compl. 7. The three-year statute of limitations began to run at that point, and accordingly expired in 2018.

To the extent plaintiff also alleges a broader conspiracy spanning the entire period from February 2015 to May 2022, plaintiff may not rest his conspiracy claims on the alleged false arrest, malicious prosecution, or Equal Protection violations described above. The Second Circuit has held that a litigant may not avoid the statute of limitations applicable to past violations of a litigant's constitutional rights "by asserting that a series of separate wrongs were committed pursuant to a conspiracy." *Singleton*, 632 F.2d at 192; *see Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995).

Accordingly, plaintiff's false arrest, malicious prosecution, Equal Protection, and conspiracy claims arising from his 2015 arrest and prosecution are dismissed as time-barred.

## II. Plaintiff's Claims Arising Out of the September 2020 ACS Raid Are Dismissed.

Plaintiff next brings claims for unlawful entry and unlawful seizure arising from the actions of ACS agent Milbouer in September 2020. Plaintiff alleges that ACS agents unlawfully entered the residence where Ms. Douglas was staying with plaintiff's children and unlawfully took the children out of the home. *See* Compl. 11. These claims are dismissed.

At the outset, it is well established that "Fourth Amendment rights are personal rights . . . [that] may not be vicariously asserted." *United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)). Accordingly, plaintiff consents to the dismissal of these claims to the extent they assert not plaintiff's own Fourth Amendment rights, but those of his children and Ms. Douglas. *See* Pl.'s Opp'n to Mot. to Dismiss 8 (Dkt. #23) (stating

8

that plaintiff "request[s] the dismissal of this claim regarding his children without prejudice"). Those claims are therefore dismissed for lack of Fourth Amendment standing.

Nor does plaintiff assert that the September 2020 entry violated his *own* Fourth Amendment rights. That is understandable, since Plaintiff does not allege that he was present at the uncle's house when the ACS agents appeared, and he gives no indication that he ever spends time there, much less that he has a sufficiently close connection to the premises as to be able to "claim a legitimate expectation of privacy in a dwelling other than his own." *Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016) (stating that courts assessing the question can consider, among other factors, "whether the guest's visit was social or commercial in nature, the length of time the guest spent on the premises, . . . the presence or absence of a previous connection between the guest and the householder, . . . [and] whether the guest possesses a key to the dwelling, is permitted to make use of the premises in the householder's absence, . . . or keeps belongings in the host's home") (citations omitted)).

Plaintiff's Section 1983 claims based on the events September 2020 are accordingly dismissed.

### III. Plaintiff's Claims Arising Out of the May 2022 Communications from Detective Investigator Zayas Are Dismissed.

Plaintiff next brings claims against DA Gonzalez and Detective Investigator Zayas based on a letter delivered to plaintiff "wherein defendant Zayas requested Plaintiff surrender himself to defendant Zayas for processing of criminal charges of theft." Compl. 7. According to plaintiff, "defendants are engaged in another . . . conspiracy to utilize the laws of the State of New York to engage in discrimination against Plaintiff," because the allegations of theft are false. *Ibid.*

9

Construing these allegations liberally to raise Section 1983 claims for conspiracy and for a violation of the Equal Protection Clause, plaintiff has failed to state a claim.[3]

*Equal Protection.* To state a claim for an Equal Protection violation, a plaintiff must allege that "(1) compared with others similarly situated, plaintiff was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Washpon v. Parr*, 561 F. Supp. 2d 394, 409 (S.D.N.Y. 2008) (quoting *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234 (2d Cir. 2004)). Generally, a plaintiff "must satisfy both elements to establish a claim of selective enforcement." *LaTrieste Rest. v. Village of Port Chester,* 188 F.3d 65, 70 (2d Cir. 1999).

Plaintiff's bare allegation that Gonzalez and Zayas discriminated against him falls short. The sole basis of plaintiff's claim is that defendants Gonzalez and Zayas falsely claimed that plaintiff stole property. Plaintiff alleges no other facts to support the claim that defendants Gonzalez or Zayas treated him differently than another person who was similarly situated, or that defendants' actions were based on impermissible considerations. Because plaintiff has failed to plausibly allege an Equal Protection violation, this claim is dismissed.

*Conspiracy.* To establish a Section 1983 conspiracy, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Additionally, "complaints containing only conclusory, vague, or general allegations that the defendants have

---

[3] Defendants argue that "[t]o the extent the Court construes the allegations in the Complaint" pertaining to Gonzalez and Zayas as raising a false arrest claim, that claim should also be dismissed. Mot. to Dismiss 16. But no such claim is evident on the face of the complaint.

10

engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d. Cir. 2002).

Because plaintiff's conspiracy claim is entirely conclusory, it is dismissed. Plaintiff does not allege that Zayas, Gonzalez, or anyone else explicitly or implicitly agreed to violate his rights, and plaintiff's assertion that he owned the disputed property cannot provide reasonable grounds to infer that defendants were engaged in a conspiracy. The failure to provide any factual allegations of an agreement between the relevant defendants renders plaintiff's Section 1983 conspiracy claim insufficient. *See, e.g.*, *Tate v. City of New York*, No. 16-CV-1894 (KAM) (SMG), 2017 WL 10186809, at *15 (E.D.N.Y. Sept. 29, 2017) (dismissing plaintiff's Section 1983 conspiracy claim due to the absence of factual allegations demonstrating an agreement between defendants). Plaintiff's Section 1983 conspiracy claim is accordingly dismissed.

### IV.  Plaintiff's Claims Against the NYPD and ACS Are Dismissed Because Those Entities May Not Be Sued.

Plaintiff also names as defendants the NYPD and ACS. He alleges that the NYPD has a "pattern and practice of violating the civil rights of non-white citizens." Compl. 7. And he says that both organizations "engage[] in racially discriminatory conduct by deliberately refusing to recognize plaintiff's tribal identity and credentials" while "routinely recogniz[ing] and accept[ing] credentials from Caucasian ethnic, religious and tribal residents." *Id.* at 10–11.

As an initial matter, plaintiff's claims again the NYPD and ACS are dismissed because "[u]nder New York Law, '[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.'" *Johnson v. N.Y.C. Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016) (citing N.Y.C. Charter Ch. 17). Accordingly, the NYPD is not a suable entity. *See, e.g.*, *Fludd v. Marroquin*, No. 19-CV-4919 (MKB), 2019 WL 6498164, at *2

11

(E.D.N.Y. Nov. 30, 2019) (collecting cases). Neither is ACS. *See, e.g.*, *Malek v. N.Y. Unified Ct. Sys.*, No. 22-CV-5416 (HG) (RER), 2023 WL 2429528, at *14 (E.D.N.Y. Mar. 9, 2023) (dismissing claims against ACS and ACS staff in their entirety). Plaintiff's claims against the NYPD and ACS are dismissed.[4]

## V.     Plaintiff's Section 1985 and 1986 Conspiracy Claims Are Dismissed.

Plaintiff also appears to allege an overarching conspiracy covering the entire seven-year period described in the complaint, invoking Sections 1985(3) and 1986. *See* Compl. 3,8. These claims, too, are dismissed for failure to state a claim.

### A.     *Plaintiff's Section 1985(3) Claims Is Dismissed.*

Plaintiff fails to state a claim against any defendants for conspiring to deprive him of equal protection of the law under Section 1985.

---

[4] While plaintiff did not name the City of New York as a defendant, a *Monell* claim against the City would be unavailing. A municipality may only be held liable under Section 1983 if an "action pursuant to official municipal policy of some nature" caused the alleged deprivation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *see Connick v. Thompson*, 563 U.S. 51, 60–61 (2011). Municipalities are "not vicariously liable under [Section] 1983 for their employees' actions." *Connick*, 563 U.S. at 60. To state a claim under *Monell*, a plaintiff must allege (i) "an official policy or custom," that (ii) "cause[d] the plaintiff to be subjected to," (iii) a "denial" of a federally guaranteed right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). A plaintiff can allege a municipal policy or custom by pointing to "decisions of a government's lawmakers, the acts of its policymaking officials, . . . practices so persistent and widespread as to practically have the force of law" or, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights." *Connick*, 563 U.S. at 61. Mere conclusory allegations that a policy, custom, or practice has led to a violation are insufficient to support a Section 1983 claim. *See Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990).
  Here, plaintiff has not sufficiently alleged the existence of an official policy or custom implemented by the City of New York that caused a deprivation of his federal rights. To be sure, plaintiff states that members of the NYPD and ACS refused to recognize tribal identification provided by himself and his family members. Compl. 6, 10–11. However, even including the alleged incidents which fall outside of the applicable three-year statute of limitations, individual acts "by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). While plaintiff does generally allege the existence of departmental policies directing city agents to accept or reject identification from certain residents based on ethnicity, religion, or tribal affiliation, *see* Compl. 10–11, plaintiff offers only "general and conclusory allegation[s]," which are insufficient to state a *Monell* claim. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015); see *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015); *Feaster v. City of New York*, No. 20-1122, 2021 WL 4597766, at *1 (2d Cir. Oct. 7, 2021).

12

The four elements of a Section 1985(3) conspiracy claim are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citing *United Bhd. of Carpenters, Loc. 610 v. Scott*, 463 U.S. 825, 828–829 (1983)). A Section 1985(3) conspiracy "must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)). To maintain an action under Section 1985, "a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).

Even construing plaintiff's claim liberally, his allegations do not survive defendants' motion to dismiss. Plaintiff fails to allege a "meeting of the minds" between any of the defendants—indeed, plaintiff does not allege that any of the groups of individual defendants—the NYPD officers who executed the 2015 arrest, Compl. 6–7, the unnamed defendants who sought to have Ms. Douglas evicted in 2018, *id.* at 10, the unnamed NYPD officers who spoke to plaintiff's neighbors in 2021, *ibid*, and the KCDA officials who asked plaintiff to turn himself in in 2022, *id.* at 7—have ever even met each other, let alone that they conspired over several years to discriminate against plaintiff. Conclusory statements that defendants formed part of a " conspiracy to deprive plaintiff of his civil, constitutional, and Universal Human Rights," *id.* at 10, do not sufficiently plead the existence of an express or tacit agreement to deprive plaintiff of his right to equal protection in the absence of more specific factual allegations. *See Doe v. Fenchel*, 837 F.

13

App'x 67, 68–69 (2d Cir. 2021) (affirming dismissal of plaintiff's Section 1985 conspiracy claim where the operative complaint did not include facts to support its conclusory allegations); *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) (recognizing that vague references to a conspiracy and hints at links to race cannot withstand a motion to dismiss).

Accordingly, plaintiff's Section 1985(3) claim is dismissed.

B.  *Plaintiff's Section 1986 Claim Is Dismissed.*

Because plaintiff's Section 1985 claim is dismissed, so too is his claim under Section 1986. That latter Section "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Mian*, 7 F.3d at 1088 (quoting *Katz v. Morgenthau*, 709 F. Supp 1219, 1236 (S.D.N.Y 1989)). "Thus, a [Section]1986 claim must be predicated upon a valid [Section] 1985 claim." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999). Accordingly, because plaintiff has failed to sufficiently plead an underlying Section 1985 claim, *see* pp. 12–14, *supra*, his Section 1986 claim must likewise be dismissed.

## CONCLUSION

For the reasons discussed above, the motion to dismiss is granted. Plaintiff may file an amended complaint within thirty days of the date of this Order. The new complaint must be captioned "Amended Complaint" and shall bear the same docket number as this Order. Plaintiff is advised that the amended complaint will replace his initial complaint. All further proceedings are stayed for thirty days. If plaintiff does not file an amended complaint within thirty days, judgment shall be entered dismissing the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, so *in forma pauperis*

status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

    SO ORDERED.

                                                               */s/ Rachel Kovner*
                                                               RACHEL P. KOVNER
                                                               United States District Judge

Dated: August 16, 2023
        Brooklyn, New York